**KOLLER LAW LLC**
David M. Koller, Esquire (037082002)
Sarah R. Lavelle, Esquire (027632004)               *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
(215)545-8917
(215) 575-0826 (fax)
davidk@kollerlawfirm.com
slavelle@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINA YOUNG<br>113 Saxby Terrace<br>Cherry Hill, NJ 08003<br>    Plaintiff, | |
| | Civil Action No. |
| v. | |
| | Hon. |
| GOLD COAST HOLDINGS, INC. d/b/a<br>T.G.I. FRIDAYS<br>970 NJ-73<br>Marlton, NJ 08053 | **Complaint and Jury Demand** |
| 133 Sevilla Avenue<br>Coral Gables, FL 33134<br>    Defendant. | |

## COMPLAINT

Plaintiff, Christina Young, by and through her attorney, Koller Law LLC hereby files this Complaint against Defendant, Gold Coast Holdings, Inc. d/b/a T.G.I. Fridays (hereinafter "Defendant") alleging that her rights, pursuant to the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq.*, have been violated. In support thereof, Plaintiff avers as follows:

### PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff, Christina Young (hereinafter "Plaintiff") is an adult individual who is domiciled

in New Jersey.

3. Plaintiff initiated this action to recover damages and equitable relief under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, hereinafter referred to as the "FMLA."

4. Defendant employed Plaintiff since March 2015 until her termination on May 4, 2017.

5. Defendant is a holding company that owns and operates multiple restaurants throughout New York, Massachusetts, New Hampshire, Connecticut, Rhode Island, New Jersey and Pennsylvania with a location at 970 NJ-73, Marlton, NJ 08083.

6. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

7. Defendant is an entity engaged in an industry or activity affecting commerce which employed 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

## JURISDICTION & VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. Subject Matter Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331, and under the FMLA, 29 U.S.C. § 2601 *et seq*.

10. This Court may properly maintain Personal Jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with the traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

2

11. Venue is appropriately laid in the United States District Court for the District of New Jersey inasmuch as all parties regularly conduct business within this District and the acts complained of by Plaintiff arose herein.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY WITH DEFENDANT

12. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

13. In March 2015, Defendant hired Plaintiff as a Server.

14. Plaintiff was well qualified for her position and performed well.

15. In January 2016, Defendant promoted Plaintiff to Associate Manager.

16. Plaintiff was well qualified for her position and performed well.

17. In March 2016, Defendant transferred Plaintiff to its 2125 NJ-38, Cherry Hill, New Jersey 08002 location.

18. In May 2016, Defendant transferred Plaintiff back to its Marlton, New Jersey location.

19. In or around June 2016, Defendant promoted Plaintiff to Service Manager.

20. Plaintiff was well qualified for her position and performed well.

21. In November 2016, Defendant promoted Plaintiff to Kitchen Manager.

22. Plaintiff was well qualified for her position and performed well.

### PLAINTIFF WAS INJURED WHILE WORKING FOR DEFENDANT

23. On December 18, 2016, Plaintiff opened Defendant's location and completed her opening job duties.

24. Plaintiff was in her office as other employees were entering Defendant's location.

25. As Plaintiff got up to open her office door, she tripped over her chair and severely injured her left foot and ankle.

26. Fernando LNU, Line Cook, and Cleo LNU, Prep Cook, helped Plaintiff off of the floor

and into a chair.

## PLAINTIFF REPORTED THE WORKPLACE INJURY

27. Plaintiff then called Chris Corbo, Director of Operations, and notified him that she had fallen at work and severely injured her left foot and ankle.

28. Mr. Corbo instructed Plaintiff to contact Defendant's claims department to report her injury and then go to the hospital.

29. Plaintiff did as she was directed and called Defendant's claims department and reported her work injury before going to Virtua Voorhees Hospital.

30. At Virtua Voorhees Hospital, Plaintiff was treated by Dr. Ramrakshah Tiwari.

31. Dr. Tiwari believed Plaintiff fractured her left foot and referred Plaintiff to Reconstructive Orthopedics for a follow-up appointment.

32. However, Plaintiff was not able to attend her follow-up appointment until she heard from the workers' compensation claims adjuster that the appointment was approved.

33. On or around December 27, 2016, Dan Malloy, Claims Adjuster of Cannon Cochran Management Services, Inc., called Plaintiff and approved her appointment with Reconstructive Orthopedics.

34. On December 29, 2016, Plaintiff was seen at Reconstructive Orthopedics to treat her left foot and ankle injury.

35. Plaintiff was diagnosed with a left foot and ankle sprain and allowed to return to work, but with the medical restrictions of doing work sitting down and to wear a controlled ankle motion boot or "CAM Walker."

36. In addition, the physician of Reconstructive Orthopedics also scheduled Plaintiff for a follow-up appointment for January 19, 2017, which was later rescheduled to January 18,

2017.

37. Plaintiff could perform the essential duties of her position with the work restrictions of doing work sitting down and wearing a controlled ankle motion boot or "CAM Walker."

## **DEFENDANT REFUSED LIGHT DUTY TO PLAINTIFF**

38. Plaintiff immediately notified Mr. Corbo and Defendant's Human Resource Department of her medical restrictions.

39. However, Defendant informed Plaintiff that it did not have light duty for Plaintiff's position and forced her to go out on a medical leave of absence until she could return to work at full-duty.

40. As a result of Defendant's refusal to allow Plaintiff to work light duty, she was not allowed to return to work until she was cleared to return to work with no restrictions.

41. On January 18, 2017, Plaintiff was seen for her follow-up appointment at Reconstructive Orthopedics, but Plaintiff was kept on the same medical restrictions.

42. Plaintiff notified Mr. Corbo via email that she remained on her medical restrictions and had another follow-up appointment on February 8, 2017.

43. Mr. Corbo responded to Plaintiff's email stating that he needed a medical note for human resources.

44. On January 19, 2017, Plaintiff sent Mr. Corbo an email explaining that the workers' compensation adjuster would be faxing the note from Reconstructive Orthopedics to Defendant.

45. On February 8, 2017, Plaintiff had another follow-up appointment at Reconstructive Orthopedics. Plaintiff was kept on the same medical restrictions and was prescribed an MRI.

46. That same day, Plaintiff notified Mr. Corbo of her follow-up appointment results and her need for an MRI.

47. On February 17, 2017, Plaintiff had her MRI conducted at Stat Imaging.

48. On February 22, 2017, Plaintiff went to Reconstructive Orthopedics to go over her MRI report.

49. On that same day, Plaintiff sent Mr. Corbo an email with an update of her medical status and that she had a follow-up appointment on March 15, 2017.

50. Plaintiff was kept on the same medical restrictions and was told to have another follow-up appointment on March 15, 2017 with surgery being a possibility.

## **PLAINTIFF REGULARLY UPDATED MR. CORBO**

51. Plaintiff sent Mr. Corbo an email on March 15, 2017 with the updates.

52. On April 5, 2017, Plaintiff returned for her follow-up appointment at Reconstructive Orthopedics and was notified that she needed surgery on her left foot and ankle.

53. That same day, Plaintiff notified Mr. Corbo via email of her follow-up appointment and the need for surgery which was not currently scheduled.

54. On April 5, 2017, Mr. Corbo responded to Plaintiff's email, stating "thanks."

## **DEFENDANT UNLAWFULLY TERMINATED PLAINTIFF**

55. On or around May 10, 2017, Plaintiff received via US First Class Mail a COBRA packet dated May 8, 2017 from Defendant, notifying her that she had been terminated on May 4, 2017 and that her insurance continued until May 31, 2017.

56. At all times, Plaintiff believed that she was on an approved workers' compensation leave of absence.

57. Plaintiff had not received any notification or communication from Defendant regarding

6

her termination before receiving the COBRA packet.

## PLAINTIFF CALLED HR AFTER LEARNING OF HER TERMINATION

58. Plaintiff immediately called Defendant's Human Resource Department and spoke to Lourdes Barsky, Senior Director of Human Resources.

59. Ms. Barsky notified Plaintiff that she had been terminated due to her Family and Medical Leave Act ("FMLA") leave expiring on May 4, 2017.

60. Plaintiff was never notified that she had been put on FMLA leave and both she and her physicians were never given FMLA documents from Defendant.

## DEFENDANT VIOLATED THE FMLA AND HER TERMINATION WAS UNLAWFUL AND RETALIATORY

61. Defendant had not provided Plaintiff any documentation regarding Plaintiff's FMLA eligibility and rights and responsibilities.

62. Defendant had not provided Plaintiff any FMLA designation notice.

63. Defendant did not provide Plaintiff with an FMLA determination notice.

64. On May 16, 2017, Plaintiff emailed Ms. Barsky requesting clarification regarding her termination due to her FMLA leave expiring since she and her physicians never received FMLA documents.

65. Ms. Barsky responded that same day stating that Plaintiff's FMLA leave ran in conjunction with her workers' compensation leave and that Plaintiff did not have to fill out any forms for Defendant to place Plaintiff on FMLA leave.

66. The following day, Ms. Barsky emailed Plaintiff that her FMLA leave had expired on March 11, 2017, but that Defendant had placed Plaintiff on a non-protected medical leave of absence and that her termination date was incorrect in the system so her benefits would run until May 31, 2017.

67. In addition, Ms. Barsky attached a letter dated March 17, 2017 and signed by Ms. Beam, which stated that Plaintiff's FMLA leave expired on March 11, 2017.

68. The letter was allegedly sent via certified mail, but Plaintiff never received the letter.

69. In fact, Ms. Barsky acknowledged that Plaintiff had not "claimed" the letter; yet, Defendant did not follow up with Plaintiff or attempt to re-send the letter.

70. Notably, Plaintiff continued to provide Mr. Corbo with updates regarding her medical status by email.

71. Neither Mr. Corbo nor Defendant forwarded the letter dated March 17, 2017 to Plaintiff by email or notified Plaintiff that her FMLA leave expired on March 11, 2017.

72. Mr. Barsky also attached a termination letter dated May 4, 2017 and signed by Ms. Beam, which stated that Plaintiff was terminated due to her FMLA leave expiring on March 11, 2017.

## COUNT I - INTERFERENCE
## **VIOLATION of the FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(b)** *et. seq.*

73. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

74. Plaintiff suffered a serious health condition that required continuing treatment by a health care provider.

75. Plaintiff gave Defendant proper notice of her own serious medical condition.

76. Defendant was aware that Plaintiff's absences from work were the result of Plaintiff's own serious medical condition.

77. Plaintiff was entitled to benefits under the FMLA.

78. Defendant placed Plaintiff on FMLA leave without notifying Plaintiff.

79. Defendant failed to provide Plaintiff with individual written notice under the FMLA:

    a. Defendant failed to provide Plaintiff with written notice of her eligibility to take FMLA leave within five (5) business days of Plaintiff notifying it that she would be taking FMLA-qualifying leave;

    b. Defendant failed to provide Plaintiff with written notice regarding whether leave would be designated as FMLA leave;

    c. Defendant failed to provide Plaintiff with written notice detailing Plaintiff's obligations under the FMLA and explaining any consequences for failing to meet those obligations.

80. Defendant failed to provide Plaintiff with written notice that her FMLA leave had expired.

81. Defendant proceeded to then terminate Plaintiff for failing to return to work after her FMLA leave expired.

82. By terminating Plaintiff's employment, Defendant refused to allow Plaintiff to return to her job upon return from leave.

83. As a result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff suffered adverse employment actions causing her harm.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

### COUNT II – DISCRIMINATION/RETALIATION
### VIOLATION of the FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(b) *et. seq.*

84. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

85. Plaintiff suffered a serious health condition that required continuing treatment by a health care provider.

9

86. Plaintiff gave Defendant proper notice of her own serious medical condition under the FMLA.

87. Plaintiff was entitled to benefits under the FMLA.

88. Defendant placed Plaintiff on FMLA leave without notifying Plaintiff.

89. Defendant failed to notify Plaintiff that her FMLA leave had expired.

90. Defendant proceeded to then terminate Plaintiff for her FMLA leave expiring.

91. Defendant's conduct was willful.

92. As a result of Defendant's discrimination and retaliation, Plaintiff suffered adverse employment actions causing her harm.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## COUNT III – WRONGFUL TERMINATION

93. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

94. Plaintiff was an at-will employee with Defendant.

95. Plaintiff sustained an injury while at work.

96. Plaintiff filed a claim for workers' compensation benefits relating to an injury she sustained at work.

97. Defendant was aware that Plaintiff was on a medical leave of absence related to her work injury.

98. Defendant terminated Plaintiff in retaliation for Plaintiff filing a worker's compensation claim.

99. This is a violation of the at-will employment doctrine in New Jersey

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

### JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

### CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

Date: 2/11/19

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

By: _____
David M. Koller, Esquire (037082002)
Sarah R. Lavelle, Esquire (027632004)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
davidk@kollerlawfirm.com
slavelle@kollerlawfirm.com

*Counsel for Plaintiff*

11